**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANTHONY SMITH, individually and on behalf of all others similarly situated,**<br><br>       **Plaintiff,**<br><br>   **-against-**<br><br>**AKELA CONTRACTING LLC; CIVETTA COUSINS JV, LLC; JDV SAFETY INC.; ALL EYES ON SAFETY INC; KARINE WILLIAMS, individually; and BRIAN MCDERMOTT, individually,**<br><br>       **Defendants.** | **Case No. 1:22-cv-1185**<br><br><br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Anthony Smith ("Plaintiff" or "Smith"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to himself, and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      This lawsuit seeks to recover overtime compensation and other damages for Plaintiff and similarly situated flagpersons (hereinafter "Flaggers") who work or have worked on private and public works construction projects in New York City operated by Akela Contracting LLC, Civetta Cousins JV LLC, and Karine Williams (together "Akela") and JDV Safety Inc., All Eyes on Safety Inc. and Brian McDermott (collectively, "JDV Safety").[1]

2.      As part of a common scheme, Akela and JDV Safety avoided paying Flaggers the prevailing wage rates required by contracts with the City of New York, failed to pay overtime compensation for hours worked over 40 in a workweek, and paid Flaggers on an untimely bi-weekly

---

[1] The Akela defendants and JDV Safety defendants are referred to collectively as "Defendants."

basis despite being manual workers.

3.      As a matter of economic reality, Akela and JDV Safety are joint employers of all Flaggers and were legally – and contractually – required to pay them the applicable prevailing wages and otherwise ensure their pay structure complied with the FLSA and NYLL's mandate of no less than 1.5 times their rates of pay.

4.      Akela is a large-scale construction contractor based out of Mount Vernon and New Rochelle, New York and is a certified Minority and Women Owed Business Enterprise (MWBE) with the City of New York.

5.      Akela has won various construction projects with the City of New York's Department of Design and Construction (DDC), including, but not limited to:

(a) A $51 million dollar contract to construction "High Levels Storm Sewers, Sanitary Sewers, Water Mains, Trunk Water Main and Appurtenances in Flatland Avenue" – Contract Pin 85017B0073;

(b) A $4 million dollar contract for school safety construction at Eagle Academy, PS016 and PS169 in Queens – Contract Pin 85019B0034;

(c) Reconstruction of 37th Road Plaza from 73rd Street to 74th Street and from 73rd Street to 37th Road to Roosevelt Avenue, including sewer, water main, streetscaping, street lighting and traffic signals;[2]

(d) Roadwork for the City of New York on 3rd Avenue between 94th and 95th Street in Manhattan.[3]

---

[2] *See Habib v. Akela Contracting LLC*, NYSCEF No. 42 ¶ 4, Index. No. 718964/2019 (Sup. Ct. Queens Cty.) (affidavit of John Keane).
[3] *See Mota v. Civetta Cousins JV LLC; Akela Contracting/Civetta Cousins JV, Joint Venture LLC*, NYSCEF No. 1, Index No. 161608/2018 (Sup. Ct. New York Cty.).

Akela has also been featured on news articles outlining their work with the City of New York.[4]

6.      As the prime contractor, Akela utilizes the services of JDV Safety to provide Flaggers to their construction sites, including city contracts outlined above and others as well.

7.      JDV Safety is a Manhattan-based construction services provider, which provides a series of safety services to Akela. According to its website, JDV Safety provides cleaning crews, safety teams, traffic management, and AEOS on-site, and density control services to construction sites.[5]

8.      Relevant here, JDV Safety provides individuals who work as Flaggers to Akela's public contractors.

9.      Both Akela and JDV Safety are joint employers of Plaintiffs and similarly situated Flaggers. In this regard, both Akela and JDV Safety maintain records of work performed, both provide day to day supervision and direction of Flaggers, and both provide various equipment used by Flaggers. Specifically, Plaintiff and similarly situated Flaggers follow the direction of both Akela foremen/engineers and JDV Safety foremen, are required to fill out time keeping records (such as sign in sheets) with both Akela and JDV Safety, and receive equipment from both Akela and JDV Safety to do their jobs, such as stop signs, traffic barriers, and safety tape.

10.     As a result, Plaintiff and similarly situated Flaggers are employees of Akela and JDV Safety under the FLSA and NYLL.

11.     Defendants failed to pay Plaintiff and similarly situated Flaggers the required prevailing wages required by Akela's contracts with the City of New York when working on public

[4] *See* "Officials promote MWBE certification," Sept. 7, 2017, Spectrum News (available at https://www.ny1.com/nyc/all-boroughs/news/2017/09/7/officials-promote-mwbe-certification) (last accessed February 4, 2022).

[5] About AEOS, All Eyes on Safety Website, (available at https://alleyesonsafety.com/about/) (last accessed February 4, 2022).

works contracts.

12.     Defendants also failed to pay Plaintiff and similarly situated Flaggers no less than 1.5 times the prevailing wage rates for all hours worked over 40 in a workweek while working on a public works contract.

13.     Plaintiff and similarly situated Flaggers are entitled to applicable prevailing wages because they are laborers within the meaning of NYLL § 220. In this regard, Plaintiff and similarly situated Flaggers are positioned either on or adjacent to the construction work sites, protect the public from the dangers on the worksite (by directing the flow of pedestrian and vehicle traffic), direct the flow of construction workers with the vehicle traffic, direct the movement of construction equipment in, on, and off the job sites, and also assist in setting up barriers and safety tape on and around the job sites. Such duties entitle Plaintiff and other Flaggers to prevailing wages.

14.     Even on job sites that are not public works, Defendants failed to pay Plaintiff and similarly situated Flaggers no less than 1.5 times their regular rate of pay.

15.     At all relevant times, Defendants also compensated Plaintiff and Flaggers in New York on a bi-weekly basis.

16.     Despite being manual workers, Defendants failed to properly pay Plaintiff and other Flaggers in New York their wages within seven calendar days after the end of the week in which these wages were earned.

17.     In this regard, Defendants failed to provide timely wages to Plaintiff and all other similarly situated Flaggers in New York.

18.     Further, Defendants failed to provide adequate wage notices and accurate wage statements to Plaintiff and other employees.

19.     Plaintiff brings this action on behalf of himself and all other similarly situated Flaggers in New York who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b).

20.     Plaintiff also brings this action on behalf of himself and all other similarly situated Flaggers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law, Article 6, §§ 190 et seq. ("NYLL"), and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

## **THE PARTIES**

**Plaintiff**

**Anthony Smith**

21.     Anthony Smith ("Smith") is an adult individual who is a resident of the State of New York.

22.     Smith was employed by Defendants as a Flagger at various locations throughout New York City from approximately 2014 to September 15, 2021.

23.     Smith is a covered employee within the meaning of the FLSA and the NYLL.

24.     A written consent form for Smith is being filed with this Complaint.

**Defendants**

25.      Defendants jointly employed Plaintiff and similarly situated Flaggers at all times relevant.

26.     Each Defendant had substantial control over Plaintiff's and Flaggers working conditions, and over the unlawful policies and practices alleged herein.

27.     Defendants have jointly employed Plaintiff and similarly situated employees at all

times relevant.

28.     During all relevant times, Defendants have applied the same employment policies, practices, and procedures to all Flaggers.

29.     During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA and NYLL.

**Akela Contracting LLC**

30.     Akela Contracting LLC is a domestic limited liability company organized and existing under the laws of New York.

31.     Akela Contracting LLC's service of process address is 113 Edison Avenue, Mount Vernon NY, 10550.

32.     Akela Contracting LLC's president is Karine Williams.

33.     Akela Contracting LLC is a MWBE certified company with the City of New York.

34.     Akela Contracting LLC has been awarded public works contracts with the City of New York, including public workers contracts in the boroughs of Manhattan, Brooklyn, the Bronx, and Queens.

35.     Based on representations in previous litigation, Akela Contracting LLC states that its updated principal office is located at 173 Huguenot Street, New Rochelle, New York 10801.[6]

36.     At all times relevant, Akela Contracting LLC has maintained control, oversight, and direction over Plaintiff and similar employees, including but not limited to, supervising and directing their work, keeping employment records, providing materials/equipment for Plaintiffs to perform their jobs, and other employment practices that applied to them.

37.     At all times relevant, Akela Contracting LLC applies the same employment

---

[6] *See Akela Contracting LLC v. National Grid*, NYSCEF No. 7, Index No. 609771/2020 (Sup. Ct. Nassau Cty.).

policies, practices, and procedures to all Flaggers in its operation, including policies, practices, and procedures with respect to payment of wages.

38.     Upon information and belief, at all relevant times, Akela Contracting LLC has had an annual gross volume of sales in excess of $500,000.

39.      At all times relevant, Akela Contracting LLC has employed more than 2 employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

40.     Akela Contracting LLC was and is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

**Civetta Cousins JV LLC**

41.     Based on information and belief, Civetta Cousins JV LLC is a domestic limited liability company organized and existing under the laws of New York.

42.     Based on information and belief, Civetta Cousins JV LLC's service of process address is 1100 East 156th Street, Bronx, New York 10474.

43.     Based on information and belief, Civetta Cousins JV LLC's registered agent is Karine Williams, with the address of 1100 East 156th Street, Bronx, New York 10474.

44.     Civetta Cousins JV LLC is identified by the City of New York's database as a corporate entity to which public workers contracts were awarded, alongside Akela Contracting, LLC.

45.     Based on information and belief, Civetta Cousins JV LLC has been awarded public works contracts with the City of New York, including public workers contracts in the boroughs of Manhattan, Brooklyn, the Bronx, and Queens.

46.     At all times relevant, Civetta Cousins JV LLC has maintained control, oversight,

and direction over Plaintiff and similar employees, including but not limited to, supervising and directing their work, keeping employment records, providing materials/equipment for Plaintiffs to perform their jobs, and other employment practices that applied to them.

47.   At all times relevant, Civetta Cousins JV LLC applies the same employment policies, practices, and procedures to all Flaggers in its operation, including policies, practices, and procedures with respect to payment of wages.

48.   Upon information and belief, at all relevant times, Civetta Cousins JV LLC has had an annual gross volume of sales in excess of $500,000.

49.   At all times relevant, Civetta Cousins JV LLC has employed more than 2 employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

50.   Civetta Cousins JV LLC  was and is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

**JDV Safety Inc.**

51. JDV Safety Inc. is a domestic business corporation organized and existing under the laws of New York.

52. JDV Safety Inc's principal executive office is located at 641 Fifth Ave, Apt 33D, New York, New York 10022.

53. JDV Safety Inc. lists its service of process address as c/o Brian McDermott, 29 East 61st Street, 2nd Floor, New York, New York 10065.

54. JDV Safety Inc. has maintained control, oversight, and direction over Plaintiff and similar employees, including but not limited to, supervising and directing their work, keeping employment records, keeping payroll records, providing materials/equipment for Plaintiffs to

8

perform their jobs, and other employment practices that applied to them.

55. JDV Safety Inc. applies the same employment policies, practices, and procedures to all Flaggers in its operation, including policies, practices, and procedures with respect to payment of wages.

56. Plaintiff received paychecks that listed JDV Safety Inc. as the corporate payor.

57. Upon information and belief, at all relevant times, JDV Safety Inc. has had an annual gross volume of sales in excess of $500,000.

58. At all times relevant, JDV Safety Inc. has employed more than 2 employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

59. JDV Safety Inc. was and is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

**All Eyes On Safety Inc.**

60. All Eyes On Safety Inc. is a domestic business corporation organized and existing under the laws of New York.

61. All Eyes on Safety Inc's principal executive office is located at 29 East 61st Street, 2nd Floor, New York, New York 10065.

62. All Eyes on Safety Inc. lists its service of process address as c/o Brian McDermott, 29 East 61st Street, 2nd Floor, New York, New York 10065.

63. All Eyes On Safety Inc. has maintained control, oversight, and direction over Plaintiff and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

64. All Eyes On Safety Inc. applies the same employment policies, practices, and procedures to all Flaggers in its operation, including policies, practices, and procedures with

respect to payment of wages.

65. Upon information and belief, at all relevant times, All Eyes On Safety Inc. has had an annual gross volume of sales in excess of $500,000.

66. At all times relevant, All Eyes on Safety Inc. has employed more than 2 employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

67. All Eyes On Safety Inc. was and is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed Plaintiff and similarly situated employees.

**Karine Williams**

68.    Upon information and belief, Karine Williams ("Williams") is a resident of the State of New York.

69.    At all relevant times, Williams has owned and/or operated Akela Contracting LLC and Civetta Cousins JV Inc.

70.    At all relevant times, Williams maintains a direct and significant management role in Akela Contracting LLC and Civetta Cousins JV LLC.

71.    At all relevant times, Williams has been actively involved in managing the day-to-day operations of Akela Contracting LLC and Civetta Cousins JV LLC.

72.    At all relevant times, Williams has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees at Akela Contracting LLC and Civetta Cousins JV LLC.

73.    At all relevant times, Williams has had the power to transfer the assets and/or liabilities of Akela Contracting LLC and Civetta Cousins JV LLC.

74.    At all relevant times, Williams has had the power to declare bankruptcy on behalf of Akela Contracting LLC and Civetta Cousins JV LLC.

75.     At all relevant times, Williams has had the power to enter into contracts on behalf of Akela Contracting LLC and Civetta Cousins JV LLC.

76.     At all relevant times, Williams has had the power to close, shut down, and/or sell Akela Contracting LLC and Civetta Cousins JV LLC.

77.     Williams is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

**Brian McDermott**

78.     Upon information and belief, Brian McDermott ("McDermott") is a resident of the State of New York.

79.     At all relevant times, McDermott has owned and/or operated All Eyes on Safety Inc. and JDV Safety Inc.

80.     At all relevant times, McDermott maintains a direct and significant management role in All Eyes on Safety Inc. and JDV Safety Inc.

81.     At all relevant times, McDermott has been actively involved in managing the day-to-day operations of All Eyes on Safety Inc. and JDV Safety Inc.

82.     At all relevant times, McDermott has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees at All Eyes on Safety Inc. and JDV Safety Inc.

83.     At all relevant times, McDermott has had the power to transfer the assets and/or liabilities of All Eyes on Safety Inc. and JDV Safety Inc.

84.     At all relevant times, McDermott has had the power to declare bankruptcy on behalf of All Eyes on Safety Inc. and JDV Safety Inc.

85.    At all relevant times, McDermott has had the power to enter into contracts on behalf of All Eyes on Safety Inc. and JDV Safety Inc.

86.    At all relevant times, McDermott has had the power to close, shut down, and/or sell All Eyes on Safety Inc. and JDV Safety Inc.

87.    McDermott is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiffs and similarly situated employees.

## JURISDICTION AND VENUE

88.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

89.    This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

90.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Defendants' conduct business in this District and some of the events or omissions giving rise to the claims arose in this District.

## COLLECTIVE ACTION ALLEGATIONS

91.    Plaintiff brings the First Cause of Action, an FLSA claim, on behalf of himself and all similarly situated persons who work or have worked as Flaggers at Akela jobsites through JDV Safety who elect to opt-in to this action (the "FLSA Collective").

92.    Defendants are liable under the FLSA for, inter alia, failing to properly compensate Plaintiff and the FLSA Collective.

93.    Consistent with Defendants' policies and patterns or practices, Plaintiff and the FLSA Collective were not paid the proper premium overtime compensation of 1.5 times their

regular rates of pay for all hours worked beyond 40 per workweek.

94.    All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

95.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, the correct overtime wages for all hours worked in excess of 40 hours per workweek.

96.    An employer "willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *See Young v. Cooper Cameron Corp.*, 586 F. 3d 201, 207 (2d Cir. 2009).

97.    According to *Whiteside v Hover-Davis*, "a claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *See* 995 F.3d 315, 323 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "For a plaintiff to nudge their claim 'across the line from conceivable to plausible,' [they] must 'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *See id.* (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1995)).

98.    Defendants' willful violation of the FLSA is evidenced by the clear nature of the violation – it is without question illegal to not pay at least 1.5 times an employee's regular rate of pay for overtime hours worked.

13

99.     Here, as evidenced below, discovery will certainly reveal evidence that Defendants blatantly ignored the FLSA's explicit requirement that it must compensate non-exempt blue-collar workers like Plaintiff no less than 1.5 times their rates of pay for overtime hours.

100.    As such, Defendants' actions constitute a willful violation of the FLSA.

**NEW YORK CLASS ACTION ALLEGATIONS**

101.    Plaintiff brings the Second, Third, Fourth, Fifth, Sixth, and Seventh Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of:

> All persons who work or have worked as Flaggers on Akela jobsites via JDV Safety in New York between June 28, 2015 and the date of final judgment in this matter (the "New York Class").[7]

102.    The members of the New York Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

103.    There are more than fifty members of the New York Class.

104.    Plaintiff's claims are typical of those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions.

105.    Plaintiff and the New York Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the New York Class similarly, and Defendants benefited from the same type

---

[7] This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

of unfair and/or wrongful acts as to each member of the New York Class.

106.    Plaintiff is able to fairly and adequately protect the interests of the New York Class and has no interests antagonistic to the New York Class.

107.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

108.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual New York Class lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

109.    Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Class individually and include, but are not limited to, the following:

> (a) whether Defendants correctly compensated Plaintiff and the New York Class for hours worked in excess of 40 per workweek;
>
> (b) whether Defendants breached contracts with local, state and/or federal governmental entities by failing to pay Plaintiff and the New York Class, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates;
>
> (c) whether Defendants failed and/or refused to pay Plaintiff and the New York Class overtime hours at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day;
>
> (d) whether Defendants failed and/or refused to pay Plaintiff and the New York Class supplemental benefits on prevailing wage jobs as

required by the New York City and New York State prevailing wage schedules;

(e)  whether Defendants correctly compensated Plaintiff and the New York Class on a timely basis;

(f)  whether Defendants failed to furnish Plaintiff and the New York Class with proper annual wage notices, as required by the NYLL;

(g)  whether Defendants failed to furnish Plaintiff and the New York Class with a proper time of hire wage notice, as required by the NYLL; and

(h)  whether Defendants failed to furnish Plaintiff and the New York Class with accurate statements with every payment of wages, as required by the NYLL.

## **THE PUBLIC WORKS CONTRACTS**

110.   Upon information and belief, Defendants have entered into certain contracts, as either a subcontractor or prime contractor, with public agencies to provide flagging and other construction work on New York City roadways, or with prime contractors not currently known, to furnish labor, material, and equipment to perform work on New York City roadways (the "Public Works Contracts").

111.   Upon information and belief, the Public Works Contracts obligated Defendants to pay Plaintiff and the Class Members at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked on Saturday and Sunday and hours worked during the evening. Defendants' failure to pay Plaintiff proper prevailing wage rates, supplemental benefits, and overtime premiums, was a corporate policy that also applied to all of Defendants' other similarly situated employees.

112.   As employees of Defendants who were assigned to work on Defendants' publicly-financed projects, Plaintiff and the Class Members were intended third-party beneficiaries of

Defendants' Public Works Contracts.

113.   As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to the plaintiff Class should have been annexed to and formed a part of the Public Works Contracts. If not annexed to the Public Works Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

114.   The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Public Works Contracts was made for the benefit of all workers furnishing labor on New York City roadways and, as such, the workers furnishing labor on New York City roadways are the beneficiaries of that promise and the contracts entered into between Defendants and government agencies.

115.   Upon information and belief, in furtherance of the Public Works  Contracts entered into by Defendants, Plaintiff and other members of the putative Class performed various flagging tasks, including, but not limited to directing the flow of construction equipment and workers and setting up barrier and safety tape on and around the construction job sites.

116.   Upon information and belief, Plaintiff should have been paid at the prevailing rate of wages (including supplemental benefits) of:[8]

> (a) June 21, 2015 through June 30, 2015: $40.32 plus $35.15 in supplemental benefits perhour;
>
> (b) July 1, 2015 through June 30, 2016: $40.98 plus $36.92 in supplemental benefits per hour;
>
> (c) July 1, 2016 through June 30, 2017: $41.48 plus $38.95 in supplemental benefits per hour;

---

[8] The rates listed are those of a "Paver & Roadbuilder – Laborer" from the Office of the Comptroller, City of New York's § 220 Prevailing Wage Schedules (*available at* https://comptroller.nyc.gov/services/for-the-public/nyc-wage-standards/wage-schedules/).

(d)  July 1, 2017 through June 30, 2018: $41.98 plus $40.98 in supplemental benefits per hour;

(e)  July 1, 2018 through June 30, 2019: $42.48 plus $43.01 in supplemental benefits per hour;

(f)  July 1, 2019 through June 30, 2020: $42.98 plus $44.86 in supplemental benefits per hour;

(g)  July 1, 2020 through June 30, 2021: $43.48 plus $46.71 in supplemental benefits per hour; and

(h)  July 1, 2021 through the present: $43.98 per hour plus $48.51 in supplemental benefits.

## PLAINTIFF'S FACTUAL ALLEGATIONS

117.   Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Anthony Smith**

118.   Smith was employed by Defendants as a Flagger at various locations throughout New York from approximately 2014 to September 15, 2021.

119.   In this regard, Smith recalls first working at Defendants' job sites at Hudson Yards in Manhattan, then on Defendants' job site located in Flatlands in Brooklyn, then on a school building project in the Bronx.

120.   During his employment, Smith was a non-exempt worker paid on an hourly basis, earning most recently $17.00 per hour.

121.   As a Flagger, Smith would be positioned either on or immediately adjacent to the construction sites. Smith would protect the public from the dangers on the worksite by directing the flow of pedestrian and vehicle traffic, directing the flow of construction workers with the vehicle traffic, directing the movement of construction equipment in, on, and off the job sites, and also assist in setting up barriers and safety tape on and around the job sites.

18

122.   Upon information and belief, the above job sites were all Public Works Contracts with the City of New York. For instance, the Flatlands job site referenced above has the Contract Pin 8501B0073.

123.   During his employment, Smith generally worked the following scheduled hours, unless he missed time for vacation, sick days, or holidays, or obtained additional shifts:

(a) Five to seven days per week, generally from 7:00 am to 3:30 pm. On some occasions, Plaintiff was required to remain on the job well past his scheduled "end time."

(b) While at the Flatlands job site, Plaintiff at times was required to work shifts starting at 5:00 pm through 2:00/3:00 am, due to the need for overnight work.

124.   As a result, Smith frequently worked over 40 hours per week.

125.   Throughout Smith's employment, he did not receive correct supplemental benefits for his work on prevailing wage projects, nor was he paid the prevailing wage rates, nor was he paid overtime based on the prevailing wage rate for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day

126.   Defendants failed to compensate Smith with proper overtime compensation of 1.5 times his regular rate of pay (or the prevailing wages to which he was entitled) for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

127.   Furthermore, during his employment, over twenty-five percent of Smith's duties were physical tasks, including but not limited setting up barricades and roadblocks, directing traffic, directing construction equipment on and off the job sites, and otherwise assisting with whatever labor was required on the job sites.

128.   Despite regularly spending more than twenty-five percent of his shift performing these physical tasks, Smith was compensated by Defendants on a bi-weekly basis.

129.    Defendants failed to accurately keep track of Smith's hours and compensate him for all work performed.

130.    Defendants failed to provide Smith with a proper time of hire wage notice as required by the NYLL.

131.    Throughout his employment, Defendants failed to provide Smith with accurate wage statements with each payment of wages as required by the NYLL.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Overtime Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

132.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

133.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of FLSA Collective.

134.    Plaintiff and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

135.    Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rates of pay for all hours worked in excess of 40 per workweek.

136.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied proper overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

**SECOND CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the New York Class)**

137.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

138.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiff and the New York Class.

139.    Defendants failed to pay Plaintiff and the New York Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rates of pay– for all hours worked beyond 40 per workweek.

140.    Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**Breach of Contract Against the Prime Contractor**
**(Brought on behalf of Plaintiff and the New York Class)**

141.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

142.    Upon information and belief, Akela entered into valid and binding multi-million-dollar contracts with the City of New York to provide construction services for Public Works Contracts.

143.    The Public Workers Contracts that Akela entered into with the City of New York, including for example the contracts for the Public Workers Projects, required it to pay, or required

it to ensure its subcontractors paid, prevailing wages and supplemental benefits to all laborers, workers, and mechanics working on the public works sites.

144.    The Public Workers Contracts incorporated all required the NYLL, including but not limited to the payment of prevailing wages under NYLL § 220.

145.    As such, the Public Workers Contracts intended, *inter alia*, for the payment of prevailing wages and supplemental benefits as a benefit for all laborers, workers, and mechanics who worked on the public workers sites.

146.    This benefit to laborers was immediate, rather than incidental, and a material term in the Publics Workers Contracts.

147.    Akela breached its agreements with the City of New York by failing to ensure that Plaintiff and all other putative class members received prevailing wages and supplemental benefits per hour worked on public work sites.

148.    As a result of Akela's breaches, Plaintiff and all other New York Class members are entitled to recover their unpaid prevailing wages and supplemental benefits, interest, liquidated damages, and attorneys' fees and costs in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
**Breach of Contract Against the Subcontractors**
**(Brought on behalf of Plaintiff and the New York Class)**

149.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

150.    Upon information and belief, JDV Safety as subcontractors entered into valid and binding contracts with Akela calling for workers, such as Plaintiff and the New York Class, to perform construction-related work on the Public Works Contract.

151.    Upon information and belief, the contracts between JDV Safety and Akela called

for work to be performed on Public Works Contracts and required Defendants to pay prevailing wages and supplemental benefits to Plaintiff and the New York Class, as required by the NYLL.

152.    JDV Safety breached their agreements with Akela by failing to pay Plaintiff and the New York Class prevailing wages and supplemental benefits per hour on Akela's public workers sites.

153.    This benefit to laborers was immediate, rather than incidental, as a material term in the contracts between Akela and JDV Safety.

154.    As a result of Defendants' breaches, Plaintiff and the New York Class are entitled to recover their unpaid prevailing wages and supplemental benefits, interest, liquidated damages, and attorneys' fees and costs in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Timely Wages**
**(Brought on behalf of Plaintiff and the New York Class)**

155.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

156.    The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiff and the New York Class.

157.    Defendants failed to pay Plaintiff and the New York Class on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiff and the New York Class being underpaid.

158.    Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Wage Notice**
**(Brought on behalf of Plaintiff and the New York Class)**

159.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

160.    Defendants have failed to supply Plaintiff and the New York Class with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

161.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the New York Class are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

**SEVENTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the New York Class)**

162.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

163.    Defendants failed to supply Plaintiffs and the New York Class with an accurate

statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked per week, including overtime hours worked if applicable; deductions; and net wages.

164.    Due to Defendants' violations of NYLL § 195(3), Plaintiff and the New York Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all Flaggers  who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure;

D.      Designation of Plaintiff as representative of the New York Rule 23 Class and counsel of record as Class Counsel;

E.      Unpaid overtime wages and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.      An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff and the New York Class;

G.      Liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

H.      Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff and the New York Class with proper time of hire/annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

I.      Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff and the New York Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article § 198;

J.      Prejudgment and post-judgment interest;

K.      Reasonable attorneys' fees and costs of the action; and

L.      Such other relief as this Court shall deem just and proper.

Dated: New York, New York
    February 11, 2022

Respectfully submitted,

/s/  Brian S. Schaffer

Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
Katherine Bonilla
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and*
*the Putative Class and Collective*

27

## FAIR LABOR STANDARDS ACT CONSENT

1.      I consent to be a party plaintiff in a lawsuit against JDV SAFETY and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2.      By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement.  I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount.  I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.


Anthony Smith (Sep 27, 2021 19:10 EDT)
_____
Signature


# Anthony Smith
_____
Full Legal Name (Print)