# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY SMITH, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>     -against-<br><br>AKELA CONTRACTING LLC; AKELA CONTRACTING/CIVETTA COUSINS JV, JOINT VENTURE, LLC; JDV SAFETY INC.; ALL EYES ON SAFETY INC; KARINE WILLIAMS, individually; and BRIAN MCDERMOTT, individually,<br><br>              Defendants. | Case No. 22 Civ. 01185 (VSB) (KHP) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
Katherine Bonilla
28 Liberty Street 30th Floor
New York, New York 10005
Tel: 212-300-0375

TABLE OF CONTENTS

I.    SUMMARY ................................................................................................................ 1

II.   Procedural History, Litigation, and Settlement Negotiations ................................... 2

III.  Summary of the Settlement Terms ........................................................................... 3

   A.  The Settlement Fund ........................................................................................... 3

   B.  Eligible Employees ............................................................................................. 4

   C.  Notice Process .................................................................................................... 4

   D.  The Settlement Award ........................................................................................ 5

IV.   Argument .................................................................................................................. 6

   A.  Standard for FLSA Settlements in the Second Circuit. ...................................... 6

   B.  The Proposed Settlement Should be Approved Because it is Fair and Reasonable. .......... 7

      1.  Factor 1: Range of Recovery ......................................................................... 8

      2.  Factors 2 & 3: Avoiding Burdens & Litigation Risks .................................... 9

      3.  Factors 4 & 5: Arm's Length Negotiation & Experience ............................. 12

      4.  No red-flags are present. .............................................................................. 13

   C.  The Service Award to Named Plaintiff is Fair and Reasonable and Should be Approved. .
       ............................................................................................................................ 14

   D.  Counsel's Requested Attorneys' Fees and Costs are Reasonable and Should be Approved
       ............................................................................................................................ 15

1.    The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit. ....................................................................... 16

2.    The *Goldberger* Factors Support An Award Of One-Third Of The Common Fund.... 17

3.    The Lodestar Cross Check Further Supports An Award To Class Counsel Of One-Third Of The Settlement Fund. .............................................................................................. 23

E.    Plaintiffs' Counsel Is Entitled To Reimbursement Of Their Litigation Expenses. .......... 24

V.    The Claims Administrator's Fees are Reasonable. ............................................................. 24

VI.    Conclusion ....................................................................................................................... 24

## TABLE OF AUTHORITIES

**CASES**

*Almanzar v. Silver Star Properties Corp.*, 699 F. Supp. 3d 253 (S.D.N.Y. 2023) ................ 20, 21

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ................................ 6

*Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764
    (S.D.N.Y. Nov. 18, 2013) ................................................................................................ 17

*Axelrod v. PosiGen CT LLC*, No. 3:22-CV-00440 (JCH), 2022 WL 18775907
    (D. Conn. Nov. 7, 2022) ................................................................................................... 9

*Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ........................................ 19

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (2013) ............................................................... 19, 23

*Caccavale v. Hewlett-Packard*, No. 2:20 Civ. 974 (NJC) (ST), 2025 WL 882221
    (E.D.N.Y. Mar. 21, 2025) ................................................................................................ 24

*Chavarria v. New York Airport Service, LLC*, 875 F. Supp. 2d 164 (E.D.N.Y. 2012) ................. 7

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) ........................................ 8

*Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
    2010 WL 1948198 (S.D.N.Y. May 11, 2010) ............................................................... 19

*DeLeon v. Wells Fargo Bank*, No. 12 Civ. 4494 (RLE), 2015 WL 2255394
    (S.D.N.Y. May 11, 2015) ................................................................................................. 16

*Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 Civ. 854 (LJL) (KHP),
    2021 WL 535635 (S.D.N.Y. Feb. 12, 2021) ............................................................ 15, 16

*Emeterio v. A&P Rest. Corp.*, No. 20 Civ. 970 (KHP), 2022 WL 274007
    (S.D.N.Y. Jan. 26, 2022) ............................................................................................ 15, 22

*Fisher v. SD Protection Inc.*, 948 F.3d 593 (2d Cir. 2020) ...................................................... 22

*Flores v. Anjost Corp.,* No. 11 CIV. 1531 AT, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014)....... 16

*Flores v. CGI Inc.,* No. 22-CV-350 (KHP), 2022 WL 13804077
    (S.D.N.Y. Oct. 21, 2022) ......................................................................................... 6, 15, 22

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ............................................ 19

*Gillet v. Zara USA, Inc.*, No. 1:20-cv-3734 (KPF), ECF No. 150
(S.D.N.Y. May 20, 2024)................................................................................. 14

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000)............................... 18, 19, 22, 23

*Guerrero v. Montefiore Health Sys, Inc.*, No. 22 Civ. 09194 (KHP),
2025 WL 219109 (S.D.N.Y. Jan. 15, 2025) ........................................... 15, 16, 22

*Hall v. ProSource Technologies, LLC*, No. 14 Civ. 2502 (SIL),
2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ........................................................ 6

*Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 03043 (PAE),
2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015)....................................................... 21

*Herman v. Judlau Contracting, Inc.*, 204 A.D. 3d 496 (1st Dep't April 14, 2022)..................... 11

*In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014)................. 20, 23

*In re Lawrence*, --- N.E.3d ---, 2014 WL 5430622 (N.Y. Oct. 28, 2014) .................................... 17

*In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393 (1999) ...................................... 23

*Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376
(S.D.N.Y. Sept. 16, 2011)................................................................................ 16

*Karic v. Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037
(E.D.N.Y. Apr. 27, 2016).................................................................................. 18

*Little v. Carlo Lizza & Sons Paving, Inc.*, No. 15 Civ. 7423, 2017 WL 2462652
(S.D.N.Y. June 6, 2017).................................................................................... 11

*Mangahas v. Eight Oranges Inc.,* No. 22-CV-4150 (LJL), 2024 WL 2801922
(S.D.N.Y. May 31, 2024)................................................................................... 21

*Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669 (BMC), 2012 WL 5874655
(E.D.N.Y. Nov. 20, 2012)................................................................................... 7

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) .................................. 22

*Matheson v. T-Bone Restaurant LLC,* No. 09 Civ. 4214 (DAB), 2011 WL 6402303
(S.D.N.Y. Sept. 13, 2011)................................................................................. 12

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984) ............................................ 6

*Moses v. Consol. Edison Co. of New York Inc.*, No. 18-CV-01200 (ALC),
2024 WL 1329800 (S.D.N.Y. Mar. 28, 2024) ...................................................... 11

*Perez v. Ultra Shine Car Wash, Inc.*, No. 20 Civ.782 (KMK), 2022 WL 2129053
(S.D.N.Y. June 14, 2022).................................................................................. 9, 13

*Raniere v. Citigroup, Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) ...................................... 18

*Rubin v. HSBC Bank USA, NA*, No. 20 Civ. 4566, 2025 WL 248253
(E.D.N.Y. Jan. 21, 2025) ................................................................................. 18

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999)......................................... 17

*Schaefer, Jr. v. M&T Bank Corporation*, No. 14 Civ. 06622 (PGG), ECF No. 90
(S.D.N.Y. Nov. 1, 2018) .................................................................................. 14

*Scott v. City of New York*, 643 F.3d 56 (2d Cir. 2011) .............................................. 18

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 CIV 6548 RLE, 2012 WL 1320124
(S.D.N.Y. Apr. 16, 2012).................................................................................. 17

*Sierra v. Spring Scaffolding LLC*, No. 12 Civ. 5160 (JMA), 2015 WL 10912856
(E.D.N.Y Sept. 30, 2015)................................................................................... 7

*Sukhnandan v. Royal Health Care of Long Island*, No. 12 Civ. 4216 (RLE)
2014 WL 3778173 (S.D.N.Y. July 31, 2014) ...................................................... 22

*Taft v. Ackermans*, No. 02 CIV 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ........ 21

*Tiro v. Pub. House Invs., LLC*, No. 11 CIV 7679 CM, 2013 WL 4830949
(S.D.N.Y. Sept. 10, 2013)............................................................................. 19, 23

*Van Osten v. HuiCatao Corp.*, 2024 N.Y. Misc. LEXIS 5464
(Sup. Ct. Queens County Feb. 9, 2024) ............................................................. 11

*Willix v. Healthfirst, Inc.*, No. 07 Civ 1143 (ENV)(RER),
2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ......................................................... 6

*Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982) .......................................... 7

## I.    SUMMARY

Subject to Court approval, Plaintiff Anthony Smith (the "Named Plaintiff"), individually and on behalf of opt-in Plaintiffs and prospective collective members (together, "Plaintiffs") and Akela Contracting LLC, Akela Contracting/Civetta Cousins JD, Joint Venture, LLC, and Karine Williams (together, the "Akela Defendants") and JDV Safety Inc., All Eyes on Safety Inc., and Brian McDermott (together, the "JDV Defendants") (collectively, "Defendants") have settled this wage and hour collective action for $340,000.00. The settlement satisfies all criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a *bona fide* dispute and was the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law with the assistance of this Court at a settlement conference.

Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) approving the $340,000.00 settlement set forth in the Settlement Agreement and Release[1] ("Settlement Agreement"), the releases set forth therein, and ruling that the Settlement Agreement is binding on all Parties, including the Named Plaintiff, participating Opt-in Plaintiffs and Collective Members; (2) ordering entry of the Approval Order attached as **Exhibit J**; (3) certifying the identified collective for settlement purposes only; (4) approving the proposed notices and claim form (attached as **Exhibits B** and **C**) and directing their distribution; (5) approving a service award of $10,000 to Named Plaintiff for his services to the collective; (6) approving Plaintiffs' Counsels' request for one-third of the Gross Settlement Fund for attorneys' fees; (7) approving payment of Plaintiffs' Counsels' reasonable out-of-pocket costs in the amount of $4,881.39; (8) approving the Settlement Claim Administrator's fees; (9) dismissing the case with prejudice; and (10) retaining jurisdiction as necessary for enforcing of the terms of the Agreement.

---

[1] The Settlement Agreement is attached as **Exhibit A** to the Declaration of Armando A. Ortiz in support of the Unopposed Motion ("Ortiz Decl."). Unless otherwise stated, all exhibits are attached to the Ortiz declaration.

## II.    Procedural History, Litigation, and Settlement Negotiations[2]

After concluding a pre-litigation investigation into the claims, defenses, and Defendants in this action, Plaintiff Anthony Smith filed this lawsuit on February 11, 2022. Ortiz Decl. ¶¶ 4-6. The lawsuit brings claims seeking overtime compensation, prevailing wages and related claims under the FLSA, the New York Labor Law ("NYLL"), and state-based breach of contract claims against Defendants. *Id.* ¶ 6.

After a brief stay of the case, the Parties engaged in significant discovery related to the claims and defenses in this case, including written discovery applicable to all 25 Opt-in Plaintiffs and the Named Plaintiff. *Id.* ¶¶ 7-8; 18-19. Over the course of the litigation, Defendants collectively produced thousands of pages of relevant documents, including payroll records for Public Works contracts at issue in the litigation. *Id.* Plaintiffs' Counsel received sufficient payroll data to create a damages model for Plaintiffs and the putative Collective and Class. *Id.* Additionally, the Parties negotiated and stipulated to § 216(b) FLSA notice, which was so-ordered by the Court. *Id.* ¶¶ 13-16.

The Parties prepared for and participated in an all-day settlement conference before this Court on March 13, 2024. *Id.* ¶ 20. Named Plaintiff, along with several Opt-in Plaintiffs, and representatives for the Defendants attended and participated in this settlement conference. *Id.* Although productive, the case did not settle at this settlement conference. *Id.* Shortly after the conference, the Akela Defendants subpoenaed the resident engineer responsible at the Flatlands project and took his all-day deposition on May 21, 2024. *Id.* ¶ 22. The Parties continued to negotiate in good faith after the unsuccessful March settlement conference and the third-party deposition. *Id.* ¶ 28. In this time, Plaintiffs continued to receive additional payroll data to further refine their damages model for settlement discussions. *Id.* After several more conference calls, emails, and

---

[2] For a more detailed account of the procedural history and background, please see the Ortiz Decl.

discussions of the claims and defenses, the Parties entered into a settlement in principle that contemplated contributions from both sets of Defendants. *Id.* The Parties then received sufficient financial disclosure from the JDV Defendants to confirm the settlement and their allocated contribution amount. *Id.* ¶¶ 29-30.

Over the next several months, the Parties went back and forth negotiating the terms of the long form settlement, the notices, and all other documents necessary for Court approval. *Id.* ¶¶ 32. On March 5, 2024, the Parties reached agreement on what they believed to be finalized settlement documents and circulated the same for signature. *Id.* ¶ 33. At the eleventh hour, the JDV Defendants informed the Parties they would be unable to honor their allocated contributions to the settlement. *Id.* ¶ 34. After holding a status conference with the Court, Plaintiffs' Counsel instituted a revised investigation into the JDV Defendants' financial health, including a review of competing litigation against the same defendants, and is confident that the JDV Defendants are indeed judgment proof. *Id.* ¶¶ 31-36, 35-36. After several more phone calls, the Parties determined that the settlement would go forward with the Akela Defendants remitting the full settlement sum, and made modifications consistent with this agreement. *Id.* ¶¶ 37-40. The Parties executed the Settlement Agreement on April 28, 2025. *Id.* ¶ 41.

## III.   Summary of the Settlement Terms

### A.   The Settlement Fund

The Settlement Agreement establishes a gross settlement fund of $340,000.00 to settle claims against the Defendant (the "Gross Settlement Fund"). **Ex. A** (Settlement Agreement) ¶¶ 2.26. The Gross Settlement Fund covers claims of Named Plaintiff and all other Prospective Collective Members and Opt-In Plaintiffs; all attorneys' fees and costs; service awards; reserve fund, and the fees and costs of the Settlement Claims Administrator, and payroll taxes. *Id.* ¶ 2.26.

### B.  Eligible Employees

The Prospective Collective Members means individuals who were employed as crossing guards and/or non-union flaggers by Defendants in connection with Akela Defendants' Public Works contracts from January 1, 2019 through entry of the Approval Order ("Relevant Statutory Period") *Id.* ¶ 2.18; 2.23 (collectively "Relevant Statutory Period"). **Ex. A,** Settlement Agreement ¶ 4.4. Opt-In Plaintiffs are those individuals who previously opted into the lawsuit as of June 21, 2024. *Id.* ¶ 2.13. The Parties estimate there to be approximately 180 such eligible employees, inclusive of Plaintiffs. Ortiz Decl. ¶ 180. The Settlement also includes an upper echelon of eligible work hours covered by the Settlement, thus, there is an upper limiter of who is eligible to participate. *Id.* ¶ 58.

### C.  Notice Process

Within five (5) business days of the Effective Date, Defendants will provide the Settlement Claims Administrator and Plaintiffs' Counsel an electronic list of all known Prospective Collective Members and Opt-In Plaintiffs, and, to the extent known by Defendants, the following information: name, last known address, last known phone number(s), social security numbers, hours worked at eligible job sites (broken down between job sites) within the relevant titles during the Relevant Statutory Period (the "Class Member List"). *Id.* ¶ 3.4. Within twenty days of the Effective Date, the Settlement Claims Administrator will mail Notice Packets to Prospective Collective Members and Opt-In Plaintiffs. *Id.* ¶ 3.5.

Opt-in Plaintiffs will receive the proposed Notice (personalized to their individual estimated amounts) enclosed as **Exhibit B**. Ortiz Decl. ¶ 61. There is no claim form for Opt-in Plaintiffs, as they will receive their settlement checks automatically. *Id.* Prospective Collective Members (i.e. – those who did not previously return a consent form to join the case in the litigation

phase) will receive the proposed Notice and Claim Form (personalized with their individual estimated amounts) enclosed as **Exhibit C**. Ortiz Decl. ¶ 62. These Prospective Collective Members will have sixty (60) days to submit a valid claim form should they wish to opt in to this case, participate in this settlement, and receive their individual settlement check. *Id*. The Claim Form only requires Prospective Collective Members to sign, date, and return within the sixty (60) day time period. **Ex. A**, Settlement Agreement ¶ 3.5(E).

Only individuals who endorse and deposit/cash their settlement check will release Defendants, Released Entities, and the City of New York from all claims that arise out of, relate to, or concern the payment of wages, including claims under the FLSA, the NYLL, and other contractual and common law claims seeking prevailing wages under state and local law through the Approval Order. *Id*. ¶ 5.1; Ortiz Decl. ¶ 64. Notably, the release as to the City of New York is limited to Covered Job Sites only, which are Akela public works projects that were staffed with crossing guards by JDV (i.e. – the public workers projects relevant to, and at issue, in this case). **Ex. A**, ¶ 5.1; Ortiz Decl. ¶ 64.

### D. The Settlement Award

The Net Settlement Fund will be distributed on a pro-rata basis based on the formula set forth in the Settlement Agreement. Specifically, Named Plaintiff and Opt-in Plaintiffs will receive 1.25 points for every hour worked at an eligible Public Workers jobsite in the Relevant Time Period. *Id.* ¶ 4.5(A)-(B). Prospective Collective Members will receive one (1) point for every hour worked at an eligible Public Workers jobsite in the Relevant Time Period. *Id*. The difference in point values is to account for the substantial written discovery undertaken by Named Plaintiff and Opt-In Plaintiffs during the 2 plus years of litigation in this matter.

Each person's estimated individual settlement amount will be disclosed in their respective

Notice Packet. See *Id.* ¶ 2.12; **Ex. B, C**. Individuals will have 90 days to deposit or cash their individual settlement checks. **Ex. A**, Settlement Agreement ¶ 3(H). Defendants will fund the Gross Settlement Fund to the Claim Administrator no later than thirty (30) days after the Effective Date. *Id.* ¶ 4.1(c). The Claim Administrator will mail individual settlement checks within 30 days after the Effective Date. *Id.* ¶ 4.1(C). The Claim Administrator will send individual settlement checks no later than 10 days after funding. *Id.* ¶ 4.1(D).

## IV.    Argument

### A.  Standard for FLSA Settlements in the Second Circuit.

Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See, e.g.*, *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001). Because under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), abrogated on other grounds by *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *Hall v. ProSource Technologies, LLC*, No. 14 Civ. 2502 (SIL), 2016 WL 1555128, at *8 (E.D.N.Y. Apr. 11, 2016) ("FLSA collective actions do not implicate the same due process concerns as Rule 23 actions").

As stated in *Willix v. Healthfirst, Inc.*, the exacting standard for approval of a class action settlement under Rule 23 does not apply to FLSA settlements. No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862, at *5 (E.D.N.Y. Feb. 18, 2011) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."); *see also Flores v. CGI Inc.,* No. 22-CV-350 (KHP), 2022 WL 13804077, at *9 (S.D.N.Y. Oct. 21, 2022) (Parker, J.) (same); *Sierra*

*v. Spring Scaffolding LLC*, No. 12 Civ. 5160 (JMA), 2015 WL 10912856, at *6 (E.D.N.Y Sept. 30, 2015) ("the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement"); *Chavarria v. New York Airport Service, LLC*, 875 F. Supp. 2d 164, 176 (E.D.N.Y. 2012) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement."). There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it. *See Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) ("The difference between a Rule 23 class action and a section 16(b) class action is . . . that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound.").

### B. The Proposed Settlement Should be Approved Because it is Fair and Reasonable.

"Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Willix*, 2011 WL 754862, at *5; *see also Hall*, 2016 WL 1555128, at *8 (same); *Chavarria*, 872 F. Supp. 2d at 176 (same). "[C]ourts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Willix*, 2011 WL 754862, at *5 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982)); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669 (BMC), 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Willix*, 2011 WL 754862, at *5; *see also Lynn's Food Stores*, 679 F.2d at 1354; *Massiah*, 2012 WL 5874655, at *5.

While the Second Circuit's ruling in *Cheeks v. Freeport Pancake House, Inc.*, did not outline the factors for approving an FLSA settlement, it did identify certain red-flags, such as confidentiality, overbroad releases, and excessive attorneys' fees. 796 F.3d 199, 206 (2d Cir.

2015). Thus, even after *Cheeks*, most courts refer to the factors set forth in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) to determine if an FLSA agreement is fair and reasonable. The court in *Wolinsky* set forth the following criteria:

1) The plaintiff's range of possible recovery;

2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defendants;

3) The seriousness of the litigation risk faced by the parties;

4) Whether the settlement is a product of arm's length bargaining between experienced counsel; and the

5) Possibility of fraud or collusion.

900 F. Supp. 2d at 335. As will be discussed, below, this settlement meets the *Wolinsky* standard and does not contain any of the red-flags (or similar red-flags) discussed by *Cheeks*.

### 1. Factor 1: Range of Recovery

The first factor weighs in favor of approval. As discussed in the Ortiz Declaration, damages in this case are best viewed on a sliding scale basis, as ultimately, entitlement to damages hinged upon proving that Plaintiffs and the Collective performed prevailing wage-eligible work as opposed to non-prevailing wage work. Ortiz Decl. ¶¶ 51-53. Because it is undisputed that part of Plaintiffs' job duties were non-prevailing wage eligible (i.e. – directing pedestrian foot and vehicle traffic), it was highly unlikely that 100% of their time was spent doing solely prevailing wage eligible work. *Id.* ¶ 54.  As a result, a more likely upper echelon for prevailing wage work is the 80% range. *Id.* ¶ 54.

Thus, the range of potential recovery for base prevailing wages, FLSA/NYLL overtime based on these prevailing wages, and supplemental benefits is $0.00 to $3,520,000. *Id.* ¶ 55. Thus, the Gross Settlement Amount of $340,000 represents approximately 9.66% of this upper echelon

exposure. *Id.* ¶ 56. Breaking this down further for clarification, base FLSA overtime damages range between $0.00 (0%) and $465,418.18 (80%). *Id.* In real world terms, this settlement presupposes that, out of an 8-hour day, Plaintiffs, in addition to their traffic control duties, (i) performed traditional construction laborer tasks, and/or (ii) directed the movement of construction equipment in, on, and off active worksites, for about 46 minutes. *Id.*

Based on the significant and uncertain litigation risks discussed below, this settlement and the achieved range of recovery is a fair and reasonable result and supports approval. *See Perez v. Ultra Shine Car Wash, Inc.*, No. 20 Civ.782 (KMK), 2022 WL 2129053, at *3 (S.D.N.Y. June 14, 2022) (discussing recoveries between the 4% to 11% range and stating that such percentage should be judged "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement" and finding it fair and reasonable); *Axelrod v. PosiGen CT LLC*, No. 3:22-CV-00440 (JCH), 2022 WL 18775907, at *4 (D. Conn. Nov. 7, 2022) (recommending approval for 2.78% recovery because, although low, where other factors supported approval, "courts typically do not let the percentage of recovery impede approval, because ethe parties are generally better-positioned to judge the reasonableness of the settlement amount").

### 2.  Factors 2 & 3: Avoiding Burdens & Litigation Risks

The second and third factors also favor approval. If the Parties were to continue litigation, there would significant time and expenses necessary to get this case trial ready. Ortiz Decl. ¶¶ 45-46. In this regard, Defendants would have pushed for the depositions of all Opt-In Plaintiffs (25 to be exact), the depositions of all relevant Resident Engineers, and Plaintiffs likewise would have deposed Akela and JDV principals and field-level supervisors on the relevant projects' job sites. *Id.* ¶ 45. This is, of course, in addition to the paper discovery that would need to be obtained from New York City, all of which exist exclusively in paper format, and whose production and review

would, therefore, be highly time-consuming and costly. *Id.* Additionally, there would be substantial motion practice after discovery, including vigorously contested class certification, decertification, and summary judgment motions. *Id.* ¶ 46.

In addition to the significant transactional costs associated with litigation, this case presents several significant issues of law and fact that constitute substantial risk for Plaintiffs. *Id*. ¶ 43-44. In order for Plaintiffs to prevail on their prevailing wage claims, they will be required to demonstrate that, in addition to their civilian traffic control duties, they (i) performed the tasks of a traditional construction laborer, and/or (ii) directed the movement of construction equipment from within and without active worksites. *Id.* ¶ 51. According to the City's relevant specification, Section 6.52 CG of the New York City Department of Transportation's Standard Highway Specifications, Vol. II of II, dated August 1, 2015 (the "Highway Specifications"),[3] it is only upon such a showing that a crossing guard, for whom that self-same specification directed that the payment of a prevailing wage would ordinarily not be required, would become entitled to the payment of a prevailing wage. *Id.* ¶ 51. Accordingly, were the trier of fact to conclude that Plaintiffs have not, and/or cannot, carry their burden of demonstrating their performance of tasks for which the relevant specification directed that the payment of a prevailing wage was required, their damages, if any, would be, at best, *de minimis. Id.*  Certainly, any reliance upon such publications would also be used by Defendants to avoid liquidated damages under the FLSA and NYLL under a "good faith" defense. Additionally, the testimony of Resident Engineer Johnson Udoye, P.E. ("RE Udoye") was particularly damaging to Plaintiffs' claims, as he categorically disputed Plaintiffs' descriptions of their job duties, the location of their job duties, and otherwise disputed their entitlement to prevailing wages and other damages. *Id.* ¶¶ 25-27; 47-48.

---

[3] *See* **Exhibit E**, Section 6.52CG-Crossing Guard.

Additionally, there is an open question as to how a court can determine the percentage of time workers spend doing prevailing wage eligible work where there is (like here) the issue of dual jobs being performed. *See Little v. Carlo Lizza & Sons Paving, Inc*., No. 15 Civ. 7423, 2017 WL 2462652, at *6 (S.D.N.Y. June 6, 2017) (stating the answer of percentage of time of relevant work "may differ plaintiff by plaintiff" and welcoming "guidance as to next steps, including . . . evidence specific to individual plaintiffs"). Additionally, courts reviewing these types of cases have both certified, and not certified, classes of such workers. *Compare Herman v. Judlau Contracting, Inc.*, 204 A.D. 3d 496, 496 (1st Dep't April 14, 2022) (certifying class where no disputed issues of fact); *with Van Osten v. HuiCatao Corp.*, 2024 N.Y. Misc. LEXIS 5464 (Sup. Ct. Queens County Feb. 9, 2024) (denying certification of flagger/crossing guard case).

Furthermore, there were real questions regarding the financial ability to pay a larger judgment by the JDV Defendants. Ortiz Decl. ¶¶ 30-31, 35. In this regard, the JDV Defendants stopped their construction business in the course of the litigation, making them largely judgment proof. *Id.* ¶ 30-31. And, in the event the JDV Defendants entered into bankruptcy (a real concern), any non-prevailing wage claims, such as Wage Theft Prevention Act ("WTPA") claims, would be in a precarious state as to the Akela Defendants given the difficulty in proving a joint-employment relationship. *See Moses v. Consol. Edison Co. of New York Inc*., No. 18-CV-01200 (ALC), 2024 WL 1329800, at *7 (S.D.N.Y. Mar. 28, 2024) (in flagger/crossing guard case granting prime contractor's summary judgment on joint employment theory). Ortiz Decl. ¶ 50.

For the above reasons, the range of recovery in this settlement is a fair and reasonable result. Additionally, the allocation formula that allocates the Net Settlement Amount on a pro-rata basis based upon each individuals' hours worked is a fair and reasonable distribution of the funds. Ortiz Decl. ¶ 59. Given that Opt-In Plaintiffs fully participated in written discovery

responses to two sets of Defendants, the additional quarter point (25%) to them is also a fair and reasonable allocation given that without their assistance, there would be no collective recovery.

### 3. Factors 4 & 5: Arm's Length Negotiation & Experience

The fourth and fifth factors also weigh in favor of approval. Plaintiffs' Counsel and Defendants' Counsel have negotiated this settlement at arm's length, as evidenced from over 2 years of litigation, significant written discovery, third party deposition practice, and extensive conference calls and emails. Ortiz Decl. ¶¶ 7-41. Moreover, participating in a settlement conference before Your Honor was a tremendous assistance in both sides negotiating in good faith and working towards reaching this deal. *Id.* ¶¶ 20-21. Though the Parties finalized this settlement in principle after the Settlement Conference, the Court's assistance reinforces that the agreement is non-collusive. *See, e.g. Matheson v. T-Bone Restaurant LLC,* No. 09 Civ. 4214 (DAB), 2011 WL 6402303, at *1 (S.D.N.Y. Sept. 13, 2011) (noting the help of a third party enforces the fact that an agreement is non-collusive). Moreover, the extended negotiations over the long form agreement over several months also supports a finding that the agreement is non-collusive. Additionally, Counsel for all sides are very experienced in these wage and hour class and collective actions. *See* Ortiz Decl. ¶ 74 (overview of F&S' qualifications and experience). The Akela Defendants are represented by Previn Waran and Mark Grae of Grae & Grae and the JDV Defendants are represented by Jeffrey Douglas of Bohner PLLC, all of whom have extensive experience in construction and wage and hour claims, and have the capacity to take this case to trial and through appeals. In sum, counsel for both Defendants are well versed in wage and hour and prevailing wage law and have the resources to take this case to trial.

Given a balancing of the above factors, and considering the litigation history of this case, Plaintiffs respectfully request that the Court find the Settlement Agreement fair and reasonable.

### 4.  No red-flags are present.

There are no red flags that concerned the Second Circuit in *Cheeks* in this agreement. For instance, the release is reasonable because it waives any and all claims "that arise out of, relate to, or concern the payment of wages" as to the Defendants and Released Entities, including the FLSA, NYLL, and prevailing wage claims brought in this Action. *See* **Ex. A**, Settlement Agreement ¶ 5.1(A). The reason that this release is worded in this way is because individuals have various abilities to bring prevailing wage claims under the NYLL or quasi-contractual causes of action. Ortiz Decl. ¶ 65. Thus, unlike cases in which only FLSA claims are asserted, such language is necessary in order to provide for the release of the prevailing wage claims brought in this action. *Id.* Any release given to the City of New York is specifically limited to Covered Job Sites, as defined in the Settlement Agreement. **Ex. A**, Settlement Agreement ¶ 5.1(A); 2.19. Thus, those who cash their settlement checks are *not* providing a blanket wage release to the City of New York that encompasses work unrelated to the specific claims in *this* action. Thus, there is no issue of an overbroad release. *See, e.g.*, *Perez*, 2022 WL 2129053, at *5 (approving broadly worded release tailored to wage and hour issues "without encompassing, for example, prospective discrimination claims").

Likewise, there is no confidentiality provisions in the Agreement that could be of a concern. And, there is no Due Process concern because each individual who receives Notice will have the autonomy to determine whether or not they would like to participate in the settlement and claim their estimated individual share. Additionally, the time to return a claim form for Prospective Collective Members is 60 days. **Ex. A**, Settlement Agreement ¶ 3.5(E).  If someone is not happy with their estimated share and does not return the claim form and/or negotiate their settlement check, they do not lose any rights. *Id.* ¶ 5.1(A). Individuals will have 90 days to cash their

settlement check. *Id.* ¶ 3.5(H).

This settlement structure is routinely approved by federal courts inside and outside this Circuit. *See, e.g., Gillet v. Zara USA, Inc.*, No. 1:20-cv-3734 (KPF), ECF No. 150 (S.D.N.Y. May 20, 2024) (approving FLSA collective settlement to 497 plaintiffs where only those who endorse their settlement checks release claims) (**Exhibit F**); *Schaefer, Jr. v. M&T Bank Corporation*, No. 14 Civ. 06622 (PGG), ECF No. 90 (S.D.N.Y. Nov. 1, 2018) (**Exhibit G**) (approving similar structure of collective action settlement). For this same reason, the Court may approve the Settlement and order Notice be sent without the need of a final fairness hearing, as final fairness hearings are only required in the Rule 23 context where non-participants are bound by Court decision unless they opt-out. Thus, this structure perfectly conforms with section 216(b) of the FLSA that ensures only individuals who opt-in to this case and settlement have their claims adjudicated. As such, Plaintiffs respectfully request that the Court find the Settlement Agreement and its terms to be fair and reasonable.

**C.    The Service Award to Named Plaintiff is Fair and Reasonable and Should be Approved.**

The Court should also approve the $10,000 service award to the Named Plaintiff, as this award recognizes the services he provided to the collective in this case. The Named Plaintiff was instrumental to the initiation and prosecution of this action, and expanded considerable time and effort to assist Plaintiffs' Counsel with this case. Ortiz Decl. ¶ 70. Specifically, in addition to initially informing counsel of the underlying facts of the case, he also spread the word of this lawsuit at its inception, which resulted in 12 individuals joining this case prior to Court-authorized notice. *Id.* Additionally, Mr. Smith (along with other Opt-in Plaintiffs) personally attended the Settlement Conference last year, and remained available for the needs of the case. *Id.* ¶ 20. Also, although no retaliation has been alleged in this case, named plaintiffs like Mr. Smith undertake the

significant risk that they will be blacklisted in their respective industry for the sake of a case and others, as their names are readily available through online searches. *Id.* ¶ 70; *See, e.g., Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *10 (S.D.N.Y. Oct. 21, 2022) (Parker, J.) (noting importance of service awards to compensate plaintiffs for the time and effort expended . . . the risks incurred . . . and any other burdens sustained by the plaintiff").

Plaintiff respectfully submit the service award of $10,000 to Mr. Smith is reasonable and well within the realm of service awards approved by this Court and others in this District. *See, e.g., Guerrero v. Montefiore Health Sys, Inc.*, No. 22 Civ. 09194 (KHP), 2025 WL 219109, at *2 (S.D.N.Y. Jan. 15, 2025) (Parker, J.) (approving $15,000 and $10,000 service awards to the named plaintiffs); *Flores*, 2022 WL 13804077, at *10 (approving $10,000 and $5,000 service awards to named plaintiffs). Additionally, in exchange for Mr. Smith's service award, the general release applicable to only him would be fair and reasonable, and should be approved. *See Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 Civ. 854 (LJL) (KHP), 2021 WL 535635, at *5 (S.D.N.Y. Feb. 12, 2021) (Parker, J.) (approving general releases when additional consideration provided).

### D. Counsel's Requested Attorneys' Fees and Costs are Reasonable and Should be Approved

Plaintiffs' unopposed motion for Approval includes a request for attorneys' fees and costs of one-third, or $113,333.33 and costs up to $5,000.00, of the Settlement Fund. Ortiz Decl. ¶ 71. The fee sought – one-third of the settlement fund – is a typical award in a class or collective action settlement. *See, e.g.*, *Delijanin*, 2021 WL 535635, at *5 (approving one-third and stating "[t]his amount is in line with amounts typically approved by courts in this Circuit"); *Montefiore Health Sys, Inc.*, 2025 WL 219109, at *2 (approving one-third of $1,800,000 settlement); *Flores*, 2022 WL 13804077, at *10 (approving one-third of settlement); *Emeterio v. A&P Rest. Corp.*, No. 20 Civ. 970 (KHP), 2022 WL 274007, at *9 (S.D.N.Y. Jan. 26, 2022) (Parker, J.) (granting 1/3 of

gross settlement fund).

### 1. The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.

Plaintiffs respectfully request that the Court follow the trend in the Second Circuit as it previously has done in previous wage and hour class and collective settlements and utilize the percentage method for awarding attorneys' fees in this common fund case. *See, e.g.*, *Delijanin*, 2021 WL 535635, at *5 (approving one-third and stating "[t]his amount is in line with amounts typically approved by courts in this Circuit"); *Montefiore Health Sys, Inc.*, 2025 WL 219109, at *2 (approving one-third of $1,800,000 settlement).

Utilizing the percentage of the fund method is proper for several reasons. First, "in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award." *DeLeon v. Wells Fargo Bank*, No. 12 Civ. 4494 (RLE), 2015 WL 2255394, at *6 (S.D.N.Y. May 11, 2015); *see also Emeterio v. A&P Restaurant Corp.,* 2022 WL 274007, at *9 (S.D.N.Y. Jan. 26, 2022) ("The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Flores v. Anjost Corp.,* No. 11 CIV. 1531 AT, 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014). "Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts." *Id*. at *8. "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Id.*

The percentage method is closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *14 (S.D.N.Y. Sept. 16, 2011); *see*

*also Sewell v. Bovis Lend Lease, Inc.*, No. 09 CIV. 6548 RLE, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *In re Lawrence*, --- N.E.3d ---, 2014 WL 5430622 (N.Y. Oct. 28, 2014) (upholding 40 percent contingency fee and stating that, "[a]s a general rule, we enforce clear and complete documents, like the retainer agreement, according to their terms.").

The percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. In that regard, the percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method. *See Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method."). Finally, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie*, 166 F.3d at 461 n.4).

Based on the above, Plaintiffs respectfully submit that the Court should continue its determination that attorneys' fees should be calculated as a percentage of the total fund available.

### 2. The *Goldberger* Factors Support An Award Of One-Third Of The Common Fund.

In determining the reasonableness of fee applications, courts consider the following six factors set forth by the Second Circuit in *Goldberger v. Integrated Res., Inc.*: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the

litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. 209 F.3d 43, 50 (2d Cir. 2000). Here, all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### a. *Class Counsel's Time And Labor.*

Plaintiffs' Counsel spent significant effort to achieve the $340,000.00 settlement. In performing these tasks, Plaintiffs' Counsel expended 358.05 hours, which is reasonable for a complex case that has lasted several years. Ortiz Decl. ¶ 88. Moreover, Plaintiffs' Counsel anticipates spending additional time in the future administering the settlement and the requested fee award is also meant to compensate for that time. *Id*. ¶ 88; *Karic v. Major Auto. Companies, Inc.*, No. 09 CV 5708 (CLP), 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (fee award also compensates counsel for time required to administer the Settlement Fund in the future).

The rates used in calculating Class Counsel's lodestar are consistent with the rates approved in this Circuit. *See also Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (applying plaintiffs' counsel's hourly rates of $650-950 per hour for partners, $350-600 per hour for associates, and $180 per hour for staff and paralegals for purposes of lodestar crosscheck); *Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011) (holding rate of $550 per hour in FLSA case was reasonable). In fact, very recently, Judge Block commented on how these decade or older "reasonable rates" should be likely increased given ongoing inflation and market conditions. *See Rubin v. HSBC Bank USA, NA*, No. 20 Civ. 4566, 2025 WL 248253, at *6 (E.D.N.Y. Jan. 21, 2025) (commenting on how district courts have "for many years" not updated reasonably hourly rates for inflation and market conditions).

### b. The Litigation's Magnitude And Complexity

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50. "Courts have recognized that wage and hour cases involve complex legal issues." *Tiro v. Pub. House Invs., LLC*, No. 11 CIV. 7679 CM, 2013 WL 4830949, at *13 (S.D.N.Y. Sept. 10, 2013) (citation omitted); *see Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law."). Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b). *See, e.g., Tiro*, 2013 WL 4830949, at *13 (awarding fees equal to one-third of the settlement fund where "[t]he numerous and complex issues involved in this action support approval of Class Counsel's attorneys' fee request."). This matter is significantly large and complex due to the several mixed questions of fact in law at hand. *See* supra section IV(B)(2).

These complex and unresolved factual and legal questions demonstrate this is not a relatively straight forward wage and hour case and supports approval of Class Counsels' attorneys' fees and costs request. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479 (2013); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of fact and law supported court's award of attorneys' fees representing approximately 40% of the common fund); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4-*8 (S.D.N.Y. May 11, 2010) (approving settlement and award of attorneys' fees representing one-third of the fund in complex wage and hour class and collective action).

19

### c.    *The Risks Of Litigation.*

Class Counsel agreed to prosecute this action without any assurance of payment for their services; litigating this case on a wholly contingent basis in the face of significant risk. Ortiz Decl. ¶¶ 89-95. The retainer agreement signed by the Named Plaintiff, along with the consent forms, reflect the contingency fee arrangement.  *Id.* ¶ 83. Plaintiffs' Counsel entered into a contingency fee arrangement knowing that there was a very real possibility of an unsuccessful outcome and, thus, no fee of any kind.  Ortiz Decl. ¶ 89; *see Almanzar v. Silver Star Properties Corp.*, 699 F. Supp. 3d 253, 256 (S.D.N.Y. 2023) ("The very purpose of a contractual contingency fee arrangement is to ensure recovery for an attorney regardless of the number of hours actually expended by the attorney. In other words, attorneys who take on FLSA cases on contingency bear the risk of having to litigate cases in which the recovery may not adequately compensate them for the time expended."); *KeyBank, N.A.*, 293 F.R.D. at 479 ("Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees."); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y. 2014) (quoting *Goldberger*, 209 F.3d at 55) ("risk should be considered 'as of when the case is filed.'"). Plaintiffs' Counsel continues to represent employees on a wholly contingent basis despite, unfortunately, having suffered several major (and very expensive) losses in wage and hour cases over the years. Ortiz Decl. ¶¶ 89-95.

Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful. *Id.* at ¶ 95. Plaintiffs' Counsel takes on difficult cases like this one because we believe that they are important as many individual workers may be unwilling or unable to front the costs of litigation for an outcome that is uncertain.  *Id.* ¶ 95.  The Southern District recognized that counsel "retained its obligations to pay salaries and overhead, and assuredly forewent other potential clients and

cases. A law firm is a business, too." *Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 03043 (PAE), 2015 WL 5577713, at *16 (S.D.N.Y. Sept. 22, 2015). The court granted class counsel's "substantial fee award" to "recognize the outsize risks that [class counsel] took in investing in [that] uncertain lawsuit." *Id.*

Thus, Plaintiffs' Counsel's attorneys' fee request is supported by this factor as well. *See, e.g., Almanzar v. Silver Star Properties Corp.,* 699 F. Supp. 3d 253, 256 (S.D.N.Y. 2023) ("[I]n cases where attorneys spend fewer hours than would be expected to match the amount in the contingency arrangement, it is only proper that they be permitted to collect their contracted fee given the risk they have assumed).

### d.  Quality Of The Representation.

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 CIV. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). Here, the recovery obtained is significant when considering the overarching risks in the case.

Moreover, Plaintiffs' Counsel is well experienced in wage and hour law and is recognized as such in the bar in this district, this Circuit, and nationwide. *See, e.g.*, *Mangahas v. Eight Oranges Inc.,* No. 22-CV-4150 (LJL), 2024 WL 2801922, at *9 (S.D.N.Y. May 31, 2024) ("Fitapelli & Schaffer, LLP, the law firm representing the plaintiffs in this case, has substantial experience litigating federal class action wage and hour cases, and has won more than $200 million in awards for their clients in these cases."); Ortiz Decl. ¶¶ 74-82.

### e.  The Fee Is Reasonable In Relation To The Settlement.

Class Counsel's request for one-third of the fund "is reasonable and consistent with the norms of class litigation in this circuit." *Sukhnandan v. Royal Health Care of Long Island*, No. 12

Civ. 4216 (RLE) 2014 WL 3778173 at *13 (S.D.N.Y. July 31, 2014). Courts in this Circuit have routinely approved requests for one-third of the fund in cases with settlement funds similar or substantially larger than the present action. *See, e.g.*, *Montefiore Health Sys, Inc*., 2025 WL 219109, at *2 (approving one-third of $1,800,000 settlement); *Emeterio*, 2022 WL 274007, at *9 (granting one-third of 450,000); *Flores*, 2022 WL 13804077, at *10 (approving one-third of $435,000); *Delijanin*, 2021 WL 535635, at *5 (approving one-third of $445,000).

Moreover, the Second Circuit also clarified that "[w]hile in some cases the proportion of fees may be relevant in considering the reasonableness of an award (for example, the multi-million dollar securities class action involving a common fund, often cited by district courts in evaluating fee requests, *see Goldberger*, 209 F.3d at 50-51), there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit." *Fisher v. SD Protection Inc*., 948 F.3d 593, 600 (2d Cir. 2020). In fact, "[i]n most FLSA cases, it does not make sense to limit fees to 33% of the total settlement [since] FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries." *Id.* Therefore, as the Second Circuit has "long held, … a fee may not be reduced merely because the fee would be 'disproportionate to the financial interest at stake in the litigation.'" *Id.* at 604. Additionally, counsel's fee should be calculated as a percentage of the full amount of money that the settlement made available. *See, e.g. Masters v. Wilhelmina Model Agency, Inc*., 473 F.3d 423, 436-37 (2d Cir. 2007) (holding district court erred when it calculated percentage of fund based on claims made against the fund rather than on the entire fund created by counsel's efforts). Therefore, this factor weighs in favor of granting the requested fees.

f. *Public Policy Considerations.*

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 399 (1999). "Counsel's fees should reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest. While court awarded fees must be reasonable, setting fees too low or randomly will create poor incentives to bringing large class action cases." *Id.* at 352 (internal quotation marks and citations omitted).

Thus, this factor weighs in favor of approving the requested attorneys' fee award.

### 3. The Lodestar Cross Check Further Supports An Award To Class Counsel Of One-Third Of The Settlement Fund.

"Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a 'baseline' or as a 'cross check.'" *Tiro*, 2013 WL 4830949, at *15 (citation omitted). While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50. Here, the sought fee of $113,333.33 is less than counsel's current lodestar of approximately $130,746.60. Ortiz Decl. ¶ 73, 87. The lodestar is also expected to increase because Plaintiffs' Counsel will of course "be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *KeyBank, N.A.*, 293 F.R.D. at 482. As such, the lodestar cross check weighs in favor of approving the sought attorneys' fee award.

**E. Plaintiffs' Counsel Is Entitled To Reimbursement Of Their Litigation Expenses.**

Pursuant to the Class Notices, Class Counsel seeks reimbursement of $4,881.39 in necessary litigation costs and expenses as part of its overall request for one-third of the Settlement Fund. Ortiz Decl. ¶ 96. "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *Sukhnandan*, 2014 WL 3778173, at *15. Given that Class Counsel's unreimbursed expenses were incidental and necessary, they should be approved.

**V.    The Claims Administrator's Fees are Reasonable.**

The Parties retained the Rust consulting, a third-party settlement administrator, as the Claims Administrator for the Settlement. Ortiz Decl. ¶ 67. The Claims Administrator's fees are estimated to be approximately $11,000. *Id.* ¶ 68. Claims Administrator fees in this amount are routinely found to be reasonable, given the extensive work necessary to administer the Settlement. *See, e.g.*, *Caccavale v. Hewlett-Packard*, No. 2:20 Civ. 974 (NJC) (ST), 2025 WL 882221, at *4 (E.D.N.Y. Mar. 21, 2025) (appoint Rust Consulting as claims administrator). At this time, because the Claims Administrator's precise fees cannot be determined with certainty, Plaintiffs respectfully request that the Court approve all reasonable fees of the Claims Administrator, up to $11,000.00.

**VI.    Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court find this Settlement a fair and reasonable compromise of *bona fide* disputes and ask the Court to approve the settlement, order Notice as outlined in the Settlement Agreement, and endorse the enclosed Proposed Order.

Dated:  New York, New York
        April 28, 2025

Respectfully submitted,

/s/ Armando A. Ortiz
Armando A. Ortiz

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
Katherine Bonilla
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiffs*

25